UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-00074-MR

| ROGER D. YOUNG, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| TODD E. ISHEE, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1] filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e)(2) and 1915A. Plaintiff paid the filing fee in this matter.[1] [6/14/2022 Docket Entry].

## I. BACKGROUND

Pro se Plaintiff Roger Dean Young ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Lincoln Correctional Center ("Lincoln CC") in Lincolnton, North Carolina. He filed this action on June 3, 2022 pursuant to 42 U.S.C. § 1983 against Defendant Todd E. Ishee,

---

[1] Plaintiff's Complaint would otherwise be subject to dismissal under 28 U.S.C. § 1915(g) because he has previously had at least three complaints dismissed for frivolity or for failure to state a claim for relief. See Young v. Louis, 1:09-cv-00278-GCM, Doc. 2. Plaintiff alleges that, "[d]uring the 1980s & 90s [he] was known as a Writ Writer." [Doc. 1 at 14]. It does not appear that any of the many suits filed by Plaintiff during this time were successful.

identified as the North Carolina Department of Public Safety (NCDPS) Commissioner of Prisons; Gary Junker, identified as the NCDPS Director of Health Services; and FNU McGee, identified as the Warden at Lincoln CC, in their individual and official capacities. [Doc. 1].

Plaintiff alleges, in relevant part, as follows. Defendant Ishee, as Commissioner of Prisons, is responsible for the day-to-day operations of the North Carolina prison system and for the appointment, employment, and oversight of prison staff and every prison unit. [Id. at 4]. Defendant Junker, as Director of Health Services, is responsible for the operation of all health care services in the prison system and for overseeing the provision of adequate health care to every offender. [Id.]. Defendant McGee, as Warden of Lincoln CC, is charged with the custody and care of Plaintiff and is responsible for overseeing facility staff and reviewing all prisoner grievances and concerns. [Id. at 5].

In 1992, while housed at Burnsville Correctional Center, Plaintiff filed a grievance requesting treatment for combat related Post-Traumatic Stress Disorder (PTSD). [Id. at 5]. In or around 1992 or 1993, Plaintiff met with a psychologist at Craggy Correctional Center seeking help for PTSD. [Id.]. In 2011, at Nash Correctional Institution, medical staff referred Plaintiff to a psychologist for chronic sleepiness, anxiety, tension, and anger. A few days

2

later Plaintiff got into a fight with another inmate and was placed in segregation. Plaintiff was placed in an isolation cell on his request. Because the noise level was reduced significantly, Plaintiff was able to sleep. In or around 2012 or 2013, after Plaintiff wrote a letter to the Secretary of Prisons, he was seen by a psychologist at Eastern Correctional Institution for the purpose of a risk assessment. [Id.]. At some point later, Plaintiff filed a claim for veterans disability benefits for PTSD, a left leg wound, and vision loss in his right eye. These injuries resulted from a mortar blast in 1968. [Id.]. While Plaintiff was housed at Marion Correctional Center, the VA[2] contacted Marion for permission to perform a Compensation and Pension (C&P) Test on Plaintiff for his PTSD and leg injury. [Id.]. On February 8, 2022, a VA provider examined Plaintiff's leg injury, and, on February 11, 2022, a VA psychologist examined Plaintiff for PTSD. Plaintiff now receives VA disability for both claims. [Id. at 6].

Plaintiff is now housed in minimum custody at Lincoln CC. The VA contacted Lincoln CC for approval for Plaintiff to receive a C&P Test for Plaintiff's right eye vision loss. Defendant McGee denied the VA's request. The VA also requested to allow a telehealth exam, which Defendant McGee

---

[2] Plaintiff does not specify whether he is referring to the U.S. Department of Veterans Affair, the N.C. Department of Military and Veterans Affairs, or some other similar entity.

also denied. Defendant McGee denied these requests because Lincoln CC does not allow outside providers to conduct C&P Tests either in person or through telehealth absent a court order. Plaintiff learned of these denials by a March 10, 2022 letter from his Veteran Services Officer. [Id.].

Plaintiff has made multiple requests to be transferred to Troy Correctional Institution, which is a single cell institution and medical unit, for his disabilities, including a DC-746 Request for Special Housing. Plaintiff's requests have been ignored. [Id.]. On February 24, 2022, Plaintiff submitted a sick call request, seeking to have the dose of his pain medication, Ibuprofen, increased. As of the date of Plaintiff's Complaint, the dose has not been increased. [Id.]. On April 5, 2022, Plaintiff was seen by Nurse Shook and his blood pressure was measured to be 151/88. After Nurse Shook asked if Plaintiff was taking his blood pressure medication, Nurse Shook discovered Plaintiff's medication had been discontinued in December 2021. The pharmacy did not give a reason for the discontinuation and Plaintiff's healthcare providers were not notified of the change. Plaintiff alleges that Defendants discontinued his blood pressure medication "to solve their 'Writ-writer problem'" and that Defendant Ishee "is maliciously intending harm and torment to the plaintiff." [Id. at 7]. Plaintiff has written letters to the FBI, Defendant Ishee, and the Governor's Office complaining of

4

Case 5:22-cv-00074-MR   Document 4   Filed 06/24/22   Page 4 of 15

overcrowding at Lincoln CC during the height of the COVID pandemic and Plaintiff believes that Defendants' acts and failures to act here "are because of Plaintiff's activities (grievances and letters) supporting prisoner rights." [Id.].

Plaintiff claims that Defendants violated his rights under the Eighth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the "clause Ex Post Facto," and "Plaintiff's State Created rights pursuant to the Div of Prisons, Policy and Procedures …" [Doc. 1 at 4].

For injuries, Plaintiff states that he has suffered for over 30 years with PTSD, that he lost monthly VA benefits and "three years [of] back payment," and that he suffers fatigue, "a feeling of loss," and risk of future physical injury [Id. at 10].

For relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. [Id. at 11].

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2).  Furthermore, under § 1915A

the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff here claims that his Eighth and Fourteenth Amendment rights were violated, as well as the Ex Post Facto Clause and rights created by NCDPS

Policy.

## A. Official Capacity Claims

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). Plaintiff's official capacity claims, therefore, do not survive initial review and will be dismissed.

## B. Eighth Amendment

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the

detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted).

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

A delay in medical treatment, without more, is not deliberate indifference to a serious medical need. See Wynn v. Mundo, 367 F.Supp.2d 832 (M.D.N.C. Feb. 7, 2005). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Taking Plaintiff's allegations as true and giving Plaintiff the benefit of every reasonable inference, Plaintiff has failed to state a claim for relief under

8

Case 5:22-cv-00074-MR   Document 4   Filed 06/24/22   Page 8 of 15

the Eighth Amendment. First, any claims related to events occurring before May 2019 are barred by the statute of limitations. See Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (affirming dismissal of § 1983 action on initial review for failure to file complaint within the applicable limitations period). Because there is no explicit statute of limitations for actions brought pursuant to 42 U.S.C. § 1983, courts borrow the state limitations periods for comparable conduct. See id. A claim for deliberate indifference to serious medical needs is subject to North Carolina's three-year limitations period for personal injuries. See DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (applying Virginia's two-year limitations period for Eighth Amendment deliberate indifference claim occurring in Virginia); N.C. Gen. Stat. § 1-52(5). Plaintiff's allegations date back to 1992 when Plaintiff began requesting treatment for PTSD. Plaintiff, however, does not connect his allegations to any actual denial of care or to the deliberate indifference to a serious medical needed by any Defendant in this action or to any conduct that might fall within the limitations period. These claims, therefore, will be dismissed.

Second, Plaintiff's Eighth Amendment rights were not violated by Defendant McGee's refusal to allow a C&P Test at Lincoln CC, which Plaintiff alleges resulted in the denial of veterans benefits for Plaintiff's vision loss.

9

Case 5:22-cv-00074-MR   Document 4   Filed 06/24/22   Page 9 of 15

Plaintiff has identified no deliberate indifference to any serious medical need, only that he has suffered some monetary loss related to Defendant McGee's decision. This claim will be dismissed.

Third, any delay in Plaintiff receiving an increased dose of Ibuprofen does not violate Plaintiff's Eighth Amendment rights, especially where Plaintiff does not allege that such delay caused substantial harm. See Wynn, 367 F.Supp.2d at 838. Moreover, Plaintiff has identified no serious medical need related to the increased dosage he requested, only that his current does is "ineffective." Finally, he has not alleged personal participation by any named Defendant in this action related to Plaintiff's Ibuprofen dose. Id. at 837 ("A medical treatment claim cannot be brought against non-medical personnel, however, unless they were personally involved with a denial of treatment or deliberately interfered with prison doctors' treatment.") (citation omitted). This claim will also be dismissed.

Finally, the Court addresses Plaintiff's claim that Defendants intentionally discontinued his blood pressure medication "to solve their Writ-writer problem." This allegation suggests that Plaintiff believes Defendants ordered his blood pressure medication be discontinued to cause Plaintiff's death. This is the type of fantastical and delusional claim that the Court must filter on initial review. See Neitzke, 490 U.S. at 327-28. Moreover, other

than Plaintiff's bare statement, he alleges nothing to support any action or inaction by Defendants relative to Plaintiff's medications. His claim is nothing more than baseless speculation and Plaintiff's claim must be dismissed on initial review.

### C. Fourteenth Amendment

Plaintiff alleges that Defendants' conduct violated his due process and equal protection rights. Plaintiff, however, does not allege how these rights were violated. To the extent Plaintiff intended to state a procedural due process claim, he has failed. To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner

11

can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).

Plaintiff here alleges that his requests for transfer to Troy Correctional Institution, which is a single cell institution, have been "ignored" for a period of less than three months. Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has failed to state a claim for violation of his Fourteenth Amendment due process rights. Failing to respond to a prisoner's requests to be transferred to another institution, especially for only a few months, does not constitute a deprivation sufficient to support a Fourteenth Amendment violation. This claim will be dismissed.

Plaintiff's allegations do not fairly implicate any other Fourteenth Amendment violations and the Court cannot create claims for the Plaintiff. Any other Fourteenth Amendment claims Plaintiff intended to assert, including an equal protection claim, will, therefore, be dismissed.

### D. Other Claims

Plaintiff claims that Defendants' conduct violated the "clause Ex Post Facto," but again fails to allege how this alleged right was violated. Moreover, the Ex Post Facto Clause of the Constitution, which prohibits laws that make criminal an act that was innocent when committed or punishments greater than that attached to the crime when committed, does not apply in

this context in any event.  See Calder v. Bull, 3 U.S. 386, 393 (1798).  The Court will dismiss this claim with prejudice.

Plaintiff also claims that Defendants violated his "State Created rights" pursuant to NCDPS Policy.  This claim also fails.  There is no cause of action under § 1983 for violation of policy.  Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. Jan. 9, 1992) ("[Section 1983] guarantees a person's *constitutional* rights against violation by state actors.  It does not provide any relief against prison rule violations assuming, *arguendo*, that such a violation occurred.") (emphasis in original).  The Court, therefore, will also dismiss this claim with prejudice.

Finally, Plaintiff vaguely alleges that Defendants' acts and failures to act resulted from "Plaintiff's activities (grievances and letters) supporting prisoners rights," including Plaintiff's complaints regarding overcrowding at Lincoln CC during the pandemic.  [Doc. 1 at 7].  Plaintiff, however, does not purport to state a claim under First Amendment for retaliation.  Nonetheless, inmates have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them.  See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).  To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2)

13

Case 5:22-cv-00074-MR   Document 4   Filed 06/24/22   Page 13 of 15

the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has nonetheless failed to state a First Amendment retaliation claim. That is, Plaintiff has not alleged that his First Amendment rights were adversely affected by Defendants' conduct. The Court, therefore, will dismiss this claim.

Because none of Plaintiff's claim survive initial review, the Court will allow Plaintiff an opportunity to amend his Complaint to state a claim for relief, but only as to those claims that were not dismissed with prejudice and only if the facts support such amendment.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Complaint fails initial review. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to properly state a claim upon which

14

Case 5:22-cv-00074-MR Document 4 Filed 06/24/22 Page 14 of 15

relief can be granted in accordance with the terms of this Order. Any amended complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the Court will dismiss this action without prejudice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff shall have thirty (30) days in which to amend his Complaint in accordance with the terms of this Order. If Plaintiff fails to so amend his Complaint, the matter will be dismissed without prejudice.

The Clerk is respectfully instructed to mail Plaintiff a blank prisoner § 1983 form.

**IT IS SO ORDERED**.

Signed: June 24, 2022

Martin Reidinger
Chief United States District Judge